IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,** Plaintiff, v. **CHARLIE JOSÉ DÍAZ-RIVERA,** Defendant. | Criminal No. 21-490 (ADC) |

**REPORT AND RECOMMENDATION**

**I.    Introduction**

On April 21, 2022, Charlie José Díaz-Rivera was charged in a superseding indictment with violations of 18 U.S.C. § 922(g)(1) (Prohibited Person in Possession of Firearms and Ammunition: Felon), 18 U.S.C. § 922(o) (Possession of a Machinegun), 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Possession with Intent to Distribute Controlled Substances), 18 U.S.C. § 924(c)(1)(A)(i) (Possession of Firearms in Furtherance of Drug Trafficking Crime), 18 U.S.C. § 922(o) (Possession of a Machinegun), and (6) 18 U.S.C. § 924(c)(1)(B)(ii) (Possession of a Machinegun in Furtherance of a Drug Trafficking Crime). Docket No. 20. On June 14, 2022, Defendant Díaz-Rivera filed a motion to suppress. Docket No. 29. The Government opposed. Docket No. 34. Defendant Díaz-Rivera replied. Docket No. 38. The motion was referred to the undersigned for an evidentiary hearing and a Report and Recommendation. Docket No. 71. An evidentiary hearing was held on November 3, 2022. The defense called agent Eli Alemán Santana and agent Gustavo Ortiz, both from the Puerto Rico Police Department ("PRPD"). Evidence was admitted. The parties made post-hearing arguments. After carefully considering the evidence presented during the hearing, the Court recommends that Defendant's motion to suppress be **DENIED**.

**II.    Factual Background**

The following account is drawn from the evidence, testimonial and documentary, received at the suppression hearing. At 5:00 p.m. on December 2, 2021, Agent Ortiz received a call from a

Case 3:21-cr-00490-ADC   Document 47   Filed 12/09/22   Page 2 of 10

USA v. Charlie José Díaz-Rivera
Crim. No. 21-490 (ADC)
Report and Recommendation

known confidential informant of the PRPD. The confidential informant provided information pertaining to three residences in Barriada Tome in Guaynabo, Puerto Rico. As to the residence at issue here, the confidential informant stated that various individuals were using the residence to store drugs and firearms that belong to a person known as Charlito. Docket No. 34-1. The confidential informant described the unit as a two-story residence, painted white, with an aluminum door, French-style windows and a bar gate (referred to hereinafter as the "Tome Property"). Id. The confidential informant had provided reliable information to the PRPD; on three occasions in the span of one month. Transcript of the Suppression Hearing ("TR") 115 at ¶¶ 1-12; 105 at ¶¶ 5-13.

Agent Alemán was assigned the surveillance of the Tome Property. On December 5, 2021, Agent Alemán and Agent Ortiz went to the Tome Property and located the access road to the property. They approached the property by car, turned around in a driveway nearby (TR 16 at ¶¶ 8-19; see Exhibit 1-O) and parked their car facing the exit of the main road that leads to the property (TR 12 at ¶¶ 12-14; see Exhibit 1-S). Agent Alemán was able to corroborate the address provided by the confidential informant and the informant's description of the Tome Property. TR 9 at ¶¶ 23-25; 10 at ¶ 1; 93 at ¶¶ 21-24. Agent Alemán could observe the two stories of the Tome Property, as well as an entrance from the side (the left side) of the bottom floor of the Tome Property. TR 24 at ¶¶ 7-17; 25 at ¶¶ 5-8; 26 at ¶¶ 3-14; 98 at ¶¶ 20-22; see also Exhibits 2-A and 2-L. He also had clear visibility to the front of the Tome Property. TR 62 at ¶¶ 3-5. No illegal activity was observed at that time. TR 21 at ¶¶ 16-19.

On December 6, 2021, Agent Alemán and Agent Ortiz returned to the Tome Property. This time they did not approach the property, nor did they use the nearby driveway to turn the car around. TR 19 at ¶¶ 4-8. They looped right at the entrance of the main road and parked the car in the same place and manner as the day before. TR 20 at ¶¶ 6-21; see Exhibit 1-S. Agent Alemán had a clear view of the front entrance of the Tome Property. TR 62 at ¶¶ 15-17; 96 at ¶¶ 19-21. Agent Ortiz was in the passenger seat and, as testified, his role was to provide security or backup to Agent Alemán. TR 108 at ¶¶ 1-10. Agent Alemán saw a car descending the road to the property in reverse. TR 31 at ¶¶ 22-25. The car approached the gate and an individual from the front entrance of the property came out. TR 32 at ¶¶ 7-25. The trunk of the car opened, and an exchange of a bag took place between the individual that came from the residence and the driver. Id. Agent Alemán

Case 3:21-cr-00490-ADC   Document 47   Filed 12/09/22   Page 3 of 10

USA v. Charlie José Díaz-Rivera
Crim. No. 21-490 (ADC)
Report and Recommendation

could not see what was inside the bag but did observe that the individual who had come out of the property was carrying a gun behind his back. Id.; TR 34 at ¶¶ 23-24; TR 35 at ¶¶ 10-12.

On December 8, 2021, Agent Alemán and Agent Ortiz again returned to the Tome Property and parked the car facing the exit of the main road to the property; with a clear view of the front and right side of the property. TR 39 at ¶¶ 4-9; 63 at ¶¶ 17-20; see Exhibit 1-S. Agent Alemán observed another car descend the road to the property in reverse. TR 39 at ¶¶ 16-18. He also observed an individual coming from the right side of the property[1] holding a transparent bag apparently containing marihuana clippings. TR 40 at ¶¶ 1-8, 20-23; 50 at ¶¶ 9-13. The individual approached the driver and handed the driver the bag; an exchange of money occurred. TR 42 at ¶¶ 1-19. The same individual went inside the property, this time through the front door of the property, and came out with a gun in his hand, which he gave to the driver. Id. The car left.

On December 14, 2021, Agent Alemán submitted a sworn statement in support of a request for a search warrant of the Tome Property. Docket No. 34-2. The affidavit is consistent with his testimony under oath. The Puerto Rico Municipal Judge authorized the search warrant on that same day and authorized the search of the Tome Property as described: a square two-story residence in concrete which was built on stilts without a visible number, glass windows, blue water tank and wall air conditioner in the bottom floor on the left side of the property, and an aluminum door, with white glass and French-style windows in both sides on the top floor at street level, the entrance has a bar gate, and the residence is painted white. Id. The description of the Tome Property to be searched also clarifies that the electrical outlet is behind a white column covered by bushes which do not allow the meter to be seen. Id.

The search warrant was executed at 3:25 a.m. on December 15, 2021. Agent Alemán participated in the execution but only to identify the Tome Property. TR 36 at ¶¶ 8-14. That was the first time that Agent Alemán entered the property. TR 66 at ¶¶ 12-14. Upon arriving at the residence, the search team secured the top floor and then the bottom floor. On the first floor the police found three individuals and on the bottom floor they found Charlie José Díaz Rivera. During

---

[1] The witness testified that the individual came from the "right to the bottom, not from the right to the top." TR 50 at ¶¶ 12-13. The Court takes this to mean that the witness was stating that the individual came from the right side of the residence (which could have been from the top or the bottom floor; see Exhibit 2-I) and not from a shed located separate from the property on the right (see Exhibit 2-F).

Case 3:21-cr-00490-ADC   Document 47   Filed 12/09/22   Page 4 of 10

USA v. Charlie José Díaz-Rivera
Crim. No. 21-490 (ADC)
Report and Recommendation

the security sweep of the first floor (prior to the execution of the search warrant of the top or bottom floor), Defendant told agents that he was the owner of the residence. TR 69 at ¶¶ 13-25; 70 at ¶¶ 1-4. During the execution, Agent Alemán learned that the Tome Property had what appears to be a separate living space in the bottom floor. TR 52 at ¶¶ 3-15; TR 53 at ¶¶ 23-25; TR 54 at ¶ 1; see Exhibits 1-L and 1-K. As testified by Agent Alemán, before that time he believed that the Tome Property was one residence. TR 53 at ¶¶ 19-22; TR 57 at ¶¶ 18-20. That was also the understanding of Agent Ortiz. TR 106 at ¶¶ 1-14. Furthermore, according to the testimony during the hearing, agents believed that the entire residence was being used for criminal activity. TR 57 at ¶¶ 21-25; TR 58 at ¶ 1. The Tome Property is in a high crime area. TR 59 at ¶¶ 18-19; TR 107 at ¶¶ 10-25. The Tome Property does not have a registered owner listed in the Centro de Recaudación de Impuestos Municipales system. TR 61 at ¶¶ 4-6. During surveillance, Agent Alemán did not see a residence number, mailbox, or electricity meter for the Tome Property. TR 29 at ¶¶ 10-15; TR 67 at ¶¶ 11-19. The Tome Property contains one main gate, a single front door and one driveway. TR 66 at ¶¶ 19-23; 67 at ¶¶ 20-2; 68 at ¶¶ 3-4. The bottom floor of the Tome Property has two entrances; one on the left of the property and another on the right. TR 70 at ¶¶ 20-24; see also Exhibit 2-J.

      A search of both floors of the Tome Property resulted in the seizure of two modified Glock pistols, two rifles, various types of ammunitions, US currency, cocaine, marihuana, crack, and heroin. Defendant has moved to suppress all evidence seized on December 15, 2021. Defendant argues that Agent Alemán knew or should have known that the Tome Property was a multi-occupancy structure and failed to so inform the issuing judge. And that, therefore, the warrant is invalid for violating the particularity required for search warrants under the Fourth Amendment. Defendant further argues that the good faith exception should be rejected because Agent Alemán provided the issuing judge information that he knew or should have known to be false. The Government counters that, at the time when the affidavit was prepared and the warrant issued, there was probable cause to search the entire Tome Property. That there was no indication from the outside of the residence or from the information available to Agent Alemán that the Tome Property was not a single unit or part of the same residence. And that, in any event, the good faith exception applies, and the exclusion of evidence is unwarranted.

USA v. Charlie José Díaz-Rivera
Crim. No. 21-490 (ADC)
Report and Recommendation

### III. Applicable Law and Analysis

The Fourth Amendment of the United States Constitution protects the right of people against unreasonable searches and seizures and provides that warrants will not issue but upon a showing of "probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. U.S. Const. amend. IV. Absent exceptional circumstances not at issue here, law enforcement must obtain a warrant from a neutral and disinterested magistrate before conducting a search. A warrant is obtained when law enforcement establishes that there is probable cause that evidence of a crime will be found in the place to be searched. As reaffirmed by the United States Supreme Court in Illinois v. Gates, 462 U.S. 213, 231 (1983), the standard of probable cause is practical and nontechnical. It does not require hard certainties, but mere probabilities as ascertained by reasonable and prudent persons (making common sense conclusions) not legal technicians. Id. (citations and quotations omitted). A magistrate judge's determination of probable cause is entitled to great deference. Id. at 236; United States v. Spinosa, 982 F.2d 620, 626 (1st Cir. 1992) (citations omitted). But the existence of probable cause is not the only requirement for a valid warrant.

For a warrant to be valid it must also describe with particularity the place or person to be searched and things to be seized. Maryland v. Garrison, 480 U.S. 79, 84 (1987). "The basic requirement [as to particularity] is that officers who are commanded to search be able from the particular description of the search warrant to identify the specific place for which there was probable cause to believe that a crime is being committed. This requirement may be satisfied by giving the address of the building and naming the person whose apartment is to be searched." United States v. Hinton, 219 F.2d 324 326 (7th Cir. 1955) (citations omitted). Particularity is thus satisfied if the law enforcement officer with reasonable effort may ascertain and identify the place to be searched. United States v. Whitney, 633 F.2d 902, 907 (9th Cir. 1980). Strictly speaking then the issue posed by Defendant in this case is not so much an issue of lack of particularity but an issue of probable cause—there is no question that the warrant at issue described with reasonable certainty the property subject to the surveillance and to be searched. See Id. Defendant takes issue not with the description of the property to be searched but with the fact that it was not identified as a multi-occupancy unit and with the allege absence of probable cause to search the bottom floor of the Tome Property.

5

Case 3:21-cr-00490-ADC   Document 47   Filed 12/09/22   Page 6 of 10

USA v. Charlie José Díaz-Rivera
Crim. No. 21-490 (ADC)
Report and Recommendation

Nonetheless, courts have found that particularity concerns or questions as to the validity of a warrant may arise when the breadth of the description of the property included in the affidavit outruns the probable cause supporting the warrant. United States v. Clark, 638 F.3d 89, 94 (2d Cir. 2011). This is the case when a warrant for a multi-occupancy building is not supported by probable cause as to each unit, as argued by Defendant here. The general rule is that, even though a single warrant may issue to cover several different residences or places in a single unit, probable cause must be established as to each for the warrant to be valid. See United States v. Hinton, 219 F.2d at 326; United States v. Johnson, 26 F.3d 669, 694 (7th Cir. 1994); United States v. Montijo-González, 978 FSupp.2d 95, 101 (D.P.R. 2013); United States v. Pérez, 484 F.3d 735, 741 (1st Cir. 2007). But this general rule allows exceptions, such as (1) when the entire building is actually being used as a single unit or when the target of the investigation has access or control of the entire structure (United States v. Butler, 71 F.3d 243, 249 (7th Cir. 1995); United States v. Johnson, 26 F.3d at 694; United States v. Montijo-González, 978 FSupp.2d at 101; United States v. Pérez, 484 F.3d at 741, United States v. Clark, 638 F.3d at 95), or (2) when the building in question would be taken to be a single-occupancy structure and officers did not know nor had reason to know that it was multi-occupancy until execution was under way (United States v. Clark, 638 F.3d at 96 (quoting 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 4.5(b) at 581-82, & n. 64 (4th ed. 2004) (collection of cases); United States v. Pérez, 484 F.3d at 741. In these two scenarios, a finding of probable cause as to a portion of the premises at issue is sufficient to support a search of the entire structure. The application of these exceptions is assessed by looking at the information that was available to the officer who submitted the affidavit at the time the warrant was requested and issued. See Maryland v. Garrison, 480 U.S. at 85 (hindsight should not be used to judge constitutionality of agent's identification of number of dwellings); United States v. Pérez, 484 F.3d at 741; United States v. Johnson, 26 F.3d at 693-696 (discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the warrant).

    **a. What information was available to Agent Alemán prior to December 14, 2021?**

A confidential informant of the PRPD, who had provided reliable information in the past, informed Agent Ortiz that the Tome Property was a two-story residence that was being used by various individuals to store drugs and firearms that belonged to a person known as Charlito. That the description of the Tome Property provided by the confidential informant matched the

Case 3:21-cr-00490-ADC   Document 47   Filed 12/09/22   Page 7 of 10

USA v. Charlie José Díaz-Rivera
Crim. No. 21-490 (ADC)
Report and Recommendation

description of the property subject to surveillance. That the area or neighborhood where the property is located was a high crime area. That, as described by the confidential informant, the Tome Property had one front gate for the entire property, that the entire property was painted the same color, and that, as described, the property had two floors. He also knew that there could be an entrance to the bottom floor from the left side of the property.[2] And that, as a result of his surveillance, he saw a person (who was carrying a weapon) coming out from the front door of the Tome Property to receive a bag from an unknown individual, and, on a different date, the same person came out from the right side of the Tome Property (where there is also an entrance to the bottom floor of the property) carrying drugs, and participating in a money and weapons exchange with another unknown individual.

Agent Alemán provided credible testimony to the effect that, even though he could see the electrical connection of the residence, he was unable during surveillance or before obtaining the search warrant to corroborate that there was only one electricity meter for the Tome Property.[3] He also provided credible testimony that he could not see the number or the mailbox of the Tome Property.[4] The mere fact that Agent Alemán may have been able to see an entrance to the Tome Property from the bottom floor (left side) is insufficient to conclude that he knew or should have known that the property was composed of two residences. It is more than reasonable to conclude that a two-story property of the size of the Tome Property could have more than one entrance. And from the distance shown in Exhibit 2-L it would be almost impossible for the agent to be able to ascertain whether that on the left was a main entrance to a residence or a mere side entrance to the property. Considering what Agent Alemán knew prior to seeking the warrant and the fact that

---

[2]   Agent Alemán testified that he was able to see the wall air conditioner and blue cistern, as well as the gates, in the bottom floor of the left side of the property. He also stated that he could see an entrance there. But from the photograph presented in evidence by Defendant and the markings made by Agent Alemán during his testimony, it is not entirely clear that the view from his car on December 5 would have permitted him (or anyone else for that matter) to identify an actual entrance to the bottom floor. See Exhibit 2-L at TR 25 at ¶¶ 5-25; 26 at ¶¶ 1-14.

[3]   On December 14, 2021, Agent Alemán returned to the Tome Property but could not verify the electricity meter. An individual came out of the residence with a firearm and the agent had to leave. See TR 64 at ¶¶ 16-25; 65 at ¶¶ 1-3, 22-25. However, as corroborated later, the Tome Property has one electricity meter installed and space for a second one. See Exhibit 1-C.

[4]   Indeed, the Tome Property is identified by one number only; the number 9. Exhibit 1-C.

Case 3:21-cr-00490-ADC   Document 47   Filed 12/09/22   Page 8 of 10

USA v. Charlie José Díaz-Rivera
Crim. No. 21-490 (ADC)
Report and Recommendation

Agent Alemán's ability to conduct the surveillance and remain at the Tome Property was limited due to the location of the property in a high crime area, it was reasonable for Agent Alemán to conclude that the Tome Property was a single unit and that it was being used to engage in criminal activity. See e.g., United States v. Johnson, 26 F.3d at 695-696 (the applicable standard is reasonableness not actual correction; finding no harm in not knowing about two different numbers in apartment units when numbers could not be seen or read from street); United States v. Whitney, 633 F.2d at 908 (no fault found when informant described one structure and agent did not know that there were two separate apartments until execution). Compare United States v. Parmenter, 531 F.Supp. 975, 977 (D.Mass. 1982) (two mailboxes, separate doorbells and knowledge that several individuals lived in the property, enough to have reason to know of the existence of two separate dwellings).

Having found that Agent Alemán did not know and had no reason to know that the Tome Property was composed of two residences could end the Court's inquiry. Notwithstanding the foregoing, the Court's recommendation that the motion to suppress be denied would nonetheless be warranted by application of the good faith doctrine. Evidence seized in violation of the Fourth Amendment is subject to exclusion by suppression. United States v. Pimentel, 26 F4th 86, 90 (1st Cir. 2022). Exclusion is justified to deter law enforcement from incurring in Fourth Amendment violations. United States v. Coombs, 857 F.3d 439, 446 (1st Cir. 2017) (quotations and citations omitted). But when the costs of exclusion outweigh the deterrence benefits of suppression, the good faith exception applies. United States v. Pimentel, 26 F4th at 90. In those cases, "evidence seized by police officers acting in objectively reasonable good faith reliance on a search warrant issued by a neutral and detached magistrate judge, but ultimately found to be unsupported by probable cause, need not be suppressed." United States v. Leon, 468 U.S. 897, 920-921 (1984). What is "objectively reasonable" will depend on the circumstances of each case. Id. at 922; United States v. Pimentel, 26 F4th at 92. Nevertheless, the good faith exception will not apply in at least three circumstances: (1) when the affiant submitted false information or information that he would have known to be false except for a reckless disregard for the truth, (2) if the issuing magistrate was not neutral, or (3) if the affidavit was so facially deficient or clearly lacking probable cause that the executing officers could not have reasonably presumed it to be valid. United States v. Leon, 468 U.S. at 923; United States v. Capozzi, 347 F3d 327, 332 (1st Cir. 2003) (citations

Case 3:21-cr-00490-ADC   Document 47   Filed 12/09/22   Page 9 of 10

USA v. Charlie José Díaz-Rivera
Crim. No. 21-490 (ADC)
Report and Recommendation

omitted). The Government bears the burden of establishing objective good faith. United States v. Brunette, 256 F.3d 14, 19 (1st Cir. 2001). It is a high hurdle when critical information is omitted from the warrant application. Id. But close calls on sufficiency of probable cause weigh in favor of application of the good faith exception. United States v. Leon, 468 U.S. at 926; United States v. Rosario, 918 F.Supp. 524, 532 (D.R.I. 1996).

      **b. What information was available to the officers executing the warrant on December 15, 2021?**

There can be little question that the warrant provided a sufficiently detailed description of the Tome Property, and that the description was that of a two-story residence. Agent Alemán and Agent Ortiz had corroborated that the property described by the confidential informant matched that of the Tome Property and Agent Alemán went to the property on December 15, 2021 to identify it to the agents in charge of execution. Agent Alemán did not participate in the search *per se*; other officers were in charge. Also, the warrant authorized the search of the entire property—both the bottom and the top floor. As testified, the executing officers first conducted a security sweep of the top floor and then a security sweep of the bottom floor. It was at that point—prior to the actual search—that Defendant informed law enforcement that he was the owner of the entire property. Under these circumstances and having found no basis to conclude that Agent Alemán knew or should have known that the Tome Property was a multi-occupancy residence prior to seeking the warrant, it was objectively reasonable for the officers executing the warrant to rely on the magistrate's finding of probable cause. None of the exceptions to the good faith doctrine apply in this case.

      Finally, Defendant's arguments for a hearing under Franks v. Delaware, 438 U.S. 154, 155–56 (1978), should also be rejected. In the papers submitted before the hearing and even after submitting evidence during the hearing, Defendant did not make a substantial showing that a false statement or an omission of a material fact **was made knowingly and intentionally, or with reckless disregard for the truth** by Agent Alemán when applying for the search warrant in this case. Franks v. Delaware, 438 U.S. 154, 155–56 (1978) (emphasis added). And even assuming for purposes of discussion that Agent Alemán's investigation of the Tome Property was deficient, Defendant did not offer any evidence that could lead the Court to conclude that Agent Alemán had serious doubts as to the truth of his statements in the affidavit to justify a Frank's hearing in this

Case 3:21-cr-00490-ADC   Document 47   Filed 12/09/22   Page 10 of 10

USA v. Charlie José Díaz-Rivera
Crim. No. 21-490 (ADC)
Report and Recommendation

case. See United States v. Ranney, 298 F.3d 74, 78 (1st Cir. 2002) (failure to investigate fully is not enough to establish reckless disregard for the truth required under Franks; there must be a showing that the affiant had serious doubts as to the truth of the allegations). Therefore, based on the conclusions of the Court with respect to the information available to Agent Alemán and his lack of knowledge that the Tome Property was a multi-occupancy unit prior to obtaining the search warrant, the Court concludes that Defendant was not entitled to a hearing under Franks. See e.g. United States v. Whitney, 633 F.2d at 908; United States v. Owen, 167 F.3d 739, 747.

### IV.     Conclusion

Having considered the evidence presented during the hearing and the parties' arguments, the Court is of the opinion that, when applying for the search warrant at issue, Agent Alemán did not know or had reason to know that the Tome Property consisted of two residences. Furthermore, pursuant to the applicable case law, the good faith exception to the exclusionary rule applies here; the law enforcement officers reasonably relied on the warrant to search the entire Tome Property. The Court recommends that Defendant's motion to suppress be **DENIED**.

**IT IS SO RECOMMENDED.**

This Report and Recommendation is issued pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed within fourteen (14) days of its receipt. Failure to file timely and specific objections to the Report and Recommendation is a waiver of the right to review by the District Judge and of appellate review. Thomas v. Arn, 474 U.S. 140, 154-155 (1985); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992).

In San Juan, Puerto Rico, this 9th day of December 2022.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge